UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ANASTASIA BONDI, MARIA CAPORALE, JASMIN
HERNANDEZ, JESSICA SARFATY, MONIQUE MAZZEI,
MATT CAM, NOEL PUGLIESE, AND ALL OTHERS
SIMILARLY SITUATED;

7:17-CV-05681 (KMK)(LMS)

THIRD AMENDED COMPLAINT

Plaintiffs,

JURY TRIAL DEMANDED

-against-

NEW ROCHELLE HOTEL ASSOCIATES D/B/A NOMA
SOCIAL, MICHAEL DEFALCO, COLBY BROCK GUALANO,
AND PETER BROCK,

Defendants.
-------------------------------------------------------------------X

NATURE OF ACTION

1. Plaintiffs bring this action to recover unpaid wages, unpaid minimum wage, liquidated damages, punitive damages, and reasonable attorney fees and costs from the Defendants, for whom the Plaintiffs performed work.

2. Plaintiffs were bartenders and waitstaff  employed in the Defendants' restaurant/nightclub (the "Restaurant"). For a time prior to filing this Complaint, the Defendants willfully committed violations of 29 U.S.C §201 et. seq., (the "Fair Labor Standards Act" or "FLSA") and the New York Labor Law ("NYLL") by failing to keep accurate time records, failing to pay the Plaintiffs minimum wage by using an unlawful tip-credit, failing to pay a spread of hours premium, not paying Plaintiffs their gratuities, and terminating the Plaintiffs employment for engaging in the protected activity of complaining about unlawful pay practices, as detailed in this Complaint.

3. The Defendants utilized a tip credit to avoid having to pay the Plaintiffs the full statutory Minimum Wage under the NYLL. The Defendants did not provide the Plaintiffs with proper notice to utilize a tip credit, did not keep track of the Plaintiffs work hours, engaged in a practice where the employer would make deductions from the Plaintiffs' pay for cash shortages, did not pay the statutorily required direct wage, and took too large a tip credit. Because the Defendants did not take the necessary steps to utilize a proper tip credit and made unlawful deductions from the Plaintiffs' wages, the Plaintiffs were paid less than the Federal and New York State minimum wage for each hour worked.

On information and belief, these specific violations were applied to every food service worker employed by the Defendants for the past six years (the "FLSA Class") and ("NYLL Class") ("Collectively the "Class Members").

4. Additionally, the Defendants retaliated against Plaintiffs Bondi, Caporale, and Hernandez for engaging in concerted activity. On June 4, 2017, the Defendants unlawfully terminated the employment of these Plaintiff when they complained that they were not being paid the proper wages. In fact, the Defendant, Michael Defalco, assaulted and battered Plaintiff Anastasia Bondi in front of a crowd of customers in response to her complaints about wage

violations.

## JURISDICTION AND VENUE

5. This action arises under 29 U.S.C §201 et. seq., (the "Fair Labor Standards Act" or "FLSA").

6. This Court has jurisdiction under 28 U.S.C. §1331 and 29 U.S.C. § 216.

7. Plaintiffs invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367.

8. Venue is proper in the Southern District of New York under 28 U.S.C. §1391 because the Defendants conduct business there and the cause of action arose there.

## THE PARTIES

9. Plaintiff Anastasia Bondi ("Anastasia") resides in Yonkers, New York.

10. Plaintiff Maria Caporale ("Maria") resides in Bronx, New York.

11. Plaintiff Jasmin Hernandez ("Jasmine") resides in Bronx, New York.

12. Plaintiff Jessica Sarfaty  ("Jessica") resides in Yonkers, New York.

13. Plaintiff Monique Mazzei ("Monique") resides in Yonkers, New York.

14. Plaintiff Matt Cam ("Matt") resides in New Rochelle, New York.

15. Plaintiff Noel Pugliese ("Noel") resides in New Rochelle, New York.

16. Upon information and belief, Defendant New Rochelle Hotel Associates d/b/a Noma Social 1 ("Corporate Defendant") is a corporation formed in the State of New York and is located at 1 Radisson Plaza, New Rochelle, N.Y 10801.

17. Upon information and belief, Defendant Michael Defalco ("Michael") manages Corporate Defendant's restaurant Noma Social, and is domiciled in the State of New York.

18. Upon information and belief, Defendant Colby Brock Gualano ("Ms. Brock"), owns all or part of Corporate Defendant, and resides in the State of New York.

19. Upon information and belief, Defendant Peter Brock ("Mr. Brock"), owns all or part of Corporate Defendant, and resides in the State of New York.

## Class Definition

20. Plaintiffs bring Causes of Action Fourth through Eighth of this lawsuit under the FLSA 29 U.S.C §216(b), as a collective action on behalf of the following class of potential opt-in litigants:

**All current and former food service workers as defined by 12 N.Y.C.R.R §146-3.4 and all tipped employees as defined in 29 U.S.C 203(t) who were employed by NEW ROCHELLE HOTEL ASSOCIATES D/B/A NOMA SOCIAL ("Corporate Defendant") who**

2

**performed work at 1 Radisson Plaza, New Rochelle, N.Y 10801 in the Noma Social restaurant/bar in any workweek in the past three years ("FLSA Class").**

21. Plaintiff reserves the right to redefine the FLSA Class prior to class certification and thereafter, as necessary.

22. Plaintiff brings Causes of Action Causes of Action Fourth through Eighth of this lawsuit as a class action under Fed. R. Civ. P. 23, on behalf of themselves and the following class:

    **All current and former food service workers as defined by 12 N.Y.C.R.R §146-3.4 and all tipped employees as defined in 29 U.S.C 203(t) who were employed by NEW ROCHELLE HOTEL ASSOCIATES D/B/A NOMA SOCIAL ("Corporate Defendant") who performed work at 1 Radisson Plaza, New Rochelle, N.Y 10801 in the Noma Social restaurant/bar in any workweek in the past six years (the "New York Class").**

23. Plaintiff reserves the right to redefine the New York Class prior to class certification and thereafter, as necessary

## BACKGROUND FACTS

24. Corporate Defendant is an "employer" under the FLSA.

25. Corporate Defendant is an "employer" under the NYLL.

26. Corporate Defendant is a restaurant.

27. Corporate Defendant is an eating or drinking place that prepares and offers food or beverage for human consumption on its premises to the public[1].

28. Corporate Defendant is engaged in the hospitality industry under the NYLL.

29. During any period of time whatsoever between October 19, 2011 through October 19, 2017,[2] Corporate Defendant had the ability to perform one or more of the following actions: (1) hire certain employees of Corporate Defendant, (2) terminate the employment of certain employees of Corporate Defendant, (3) set the wage rates of certain employees of Corporate Defendant, (4) maintain payroll records for certain employees of Corporate Defendant, or (5) institute work rules for certain employees of Corporate Defendant.

30. During any period of time whatsoever between October, 19, 2011 through October 19, 2017, Defendant Michael had the ability to perform one or more of the following actions: (1) hire certain employees of Corporate Defendant, (2) terminate the employment of certain employees of Corporate Defendant, (3) set the wage rates of certain employees of Corporate Defendant, (4) maintain payroll records for certain employees of Corporate Defendant, or (5) institute work rules for certain employees of Corporate Defendant.

31. During any period of time whatsoever between October 19, 2011 through October 19, 2017, Defendant Ms. Brock had the ability to perform one or more of the following actions: (1) hire certain employees of Corporate Defendant, (2) terminate the employment of certain employees of Corporate Defendant, (3) set the wage rates of certain employees of Corporate

---

[1] http://www.nomasocial.com/.
[2] For purposes of this Complaint this time period shall be Referred to the "Relevant Time Period" and all allegations claimed herein refer to times within the Relevant Time Period.

Defendant, (4) maintain payroll records for certain employees of Corporate Defendant, or (5) institute work rules for certain employees of Corporate Defendant.

32. During any period of time whatsoever between October 19, 2011 through October 19, 2017, Defendant Mr. Brock had the ability to perform one or more of the following actions: (1) hire certain employees of Corporate Defendant, (2) terminate the employment of certain employees of Corporate Defendant, (3) set the wage rates of certain employees of Corporate Defendant, (4) maintain payroll records for certain employees of Corporate Defendant, or (5) institute work rules for certain employees of Corporate Defendant.

33. Corporate Defendant is involved in an industry affecting commerce within the meaning of the FLSA.

34. Corporate Defendant's annual revenues exceed $500,000 for the year 2017.

35. Corporate Defendant's annual revenues exceed $500,000 for the year 2016.

36. Corporate Defendant's annual revenues exceed $500,000 for the year 2015.

37. Corporate Defendant employs at least two employees who regularly engage in interstate commerce.

38. On information and belief, Corporate Defendant regularly employs an individual that regularly and customarily uses the interstate telecommunications network to process credit card transactions with firms outside the state of New York.

39. On information and belief, Corporate Defendant regularly purchases goods from locations manufactured outside the State of New York and utilizes such products within the State of New York.

40. The business activities of the Corporate Defendant are related and performed through unified operation or common control for a common business purpose and constitutes an enterprise within the meaning of the FLSA.

41. The Corporate Defendant engages in a combination of different activities in the course of its business operation, including but not limited to: (1) cooking food, (2) advertising, (3) bookkeeping, (4) managing employees, and (5) selling alcoholic beverages (the "Related Activities").

42. The Corporate Defendant has an organizational structure whereby there is an individual, or group of individuals, who control the Related Activities.

43. Corporate Defendant failed to keep accurate and sufficient payroll and time records, as required by law.

44. During the Relevant Time Period, Corporate Defendant did not accurately record the Plaintiffs' exact daily work start time and exact daily work end time.

45. Corporate Defendant did not maintain sufficient payroll and time records to determine the weekly pay and hours worked by the Plaintiff and FLSA Class.

46. The Plaintiffs were employees of the Corporate Defendant during the Relevant Time Period.

47. The Plaintiffs were not independent contractors while performing services for Corporate Defendant during the Relevant Time Period.

48. Corporate Defendant provided all of the equipment and material for the Plaintiffs to perform their job.

49. Corporate Defendant treated the Plaintiffs' as "W-2" wage earners while employed.

50. Corporate Defendant set the Plaintiffs' work schedule, and method and rate of pay.

51. Corporate Defendant assigned the Plaintiffs the specific job duties to which they had to perform.

52. The Plaintiffs were not free to hire other employees to work in their place to perform their job duties for Corporate Defendant.

53. No Plaintiff ever had any ownership interest in Corporate Defendant and never invested capital into corporate defendant.

**Statutory Wage Notice Violations Applicable to Each Plaintiff**
**("Wage Notice Violations")**

54. Corporate Defendant failed to comply with the provisions of 12 NYCRR§146-2.3 by failing to provide each Plaintiff with an accurate paystub each week that the Plaintiffs were paid by Defendants.

55. Corporate Defendant did not provide Plaintiff with a statement of wages [3] with each payment of wages that set forth Plaintiff's hours worked, rates of pay, gross wages, credits claimed (for tips, meals and lodging) if any, deductions and net wages.

56. Corporate Defendant failed to provide each Plaintiff with a written notice of tip credit as required in 12 NYCRR §146-2.2 as a condition precedent to utilizing the tip credit as required by 12 NYCRR §146-1.3.

57. Corporate Defendant failed to provide each Plaintiff with a written notice of pay rate.

58. Corporate Defendant failed to provide each Plaintiff with a written notice of tip credit.

59. Corporate Defendant failed to provide each Plaintiff with a written notice of pay day.

60. Corporate Defendant failed to provide each Plaintiff with a written notice of tip credit as required in 29 C.F.R §531.59 as a condition precedent to utilizing the tip credit.

61. Corporate Defendant failed to provide each Plaintiff with oral or written notice of the amount of cash wage the employer is paying the Plaintiffs, which must be at least $2.13 per hour under the FLSA.

62. Corporate Defendant failed to provide each Plaintiff with a written notice of the additional amount claimed by Corporate Defendant as a tip credit.

---

[3] commonly referred to as a paystub.

63. Corporate Defendant failed to provide each Plaintiff with a written notice that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the tipped employee.

64. Corporate Defendant failed to provide each Plaintiff with a written notice that all tips received by the tipped employee are to be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.

65. Corporate Defendant failed to provide each Plaintiff with a written notice that that the tip credit will not apply to any tipped employee unless the employee has been informed of these tip credit provisions.

### UNLAWFUL TIP CREDIT PRACTICES APPLICABLE TO EACH PLAINTIFF ("UNLAWFUL TIP CREDIT PRACTICES")

66. Each Plaintiff was a "food service worker" as defined in 12 NYCRR §146-3.4(a)[4].

67. Alternatively, each Plaintiff was a "service worker" as defined in 12 NYCRR §146-3.3(a). Plaintiffs were primarily engaged in the serving of food or beverages to guests, patrons or customers in Corporate Defendants' restaurant/bar.

68. Plaintiffs regularly received $30 or more in tips from Corporate Defendants' guests, patrons or customers.

69. Plaintiffs did not perform food deliveries while working for Corporate Defendant.

70. Plaintiffs were employees who were statutorily eligible to received shared tips under 12 NYCRR §146-2.14(e).

71. Plaintiffs were bartenders while employed by Corporate Defendant.

72. Plaintiffs worked as waitstaff while employed by Corporate Defendant.

73. Plaintiffs worked as both waitstaff and bartenders while employed by Corporate Defendant.

74. As bartenders and waitstaff, Plaintiffs were responsible for serving beverages to customers dining at Corporate Defendants establishment.

75. Corporate Defendant used a tip credit as part of the compensation scheme for the Plaintiffs.

76. During the Relevant time period, the Corporate Defendant failed to pay the Plaintiffs at least the New York State minimum wage by its use of an unlawful tip credit.

77. During the Relevant time period, the Corporate Defendant failed to pay the Plaintiffs at least the Federal minimum wage by its use of an unlawful tip credit.

---

[4] NYS Minimum Wage Order Effective December 31, 2015 through December 30, 2016; also known as the NYS Hospitality Wage Order. All references to the NYS Hospitality Wage Order concerning any Plaintiff or putative plaintiff refers to the Wage Orders that were in effect during such Plaintiff's tenure of employment with Defendants.

78. Corporate Defendant paid employees classified as bartenders with a shift pay that was a set amount regardless of the hours each bartender worked.

79. This flat shift fee, on certain weeks, when divided by the shift hours the bartender worked, was less than the NYS required direct wage required under the NYLL.

80. Corporate Defendant paid other food service workers an hourly rate that was less than the NY Minimum wage by virtue of Corporate Defendants' utilization of a tip credit.

81. On information and belief, Corporate Defendant imposed on the food service workers an arrangement where Corporate Defendant retained ownership of these employees tips; specifically during parties and open bars.

<u>**UNLAWFUL UNDERPAYMENT OF WAGES APPLICABLE TO EACH PLAINTIFF ("SPREAD OF HOURS VIOLATION")**</u>

82. During the Relevant time period, the Corporate Defendant failed to pay the Plaintiffs an extra hour of pay at the then prevailing NYS Minimum Wage Rate when the Plaintiffs worked a shift exceeding 10 hours in length.

83. Each Plaintiff regularly worked shifts that exceeded 10 hours in length during their tenure of Employment with Corporate Defendant.

**PLAINTIFF ANASTASIA BONDI**

84. Anastasia started working for Corporate Defendant in or around November 2015.

85. Anastasia stopped working for Corporate Defendant in June 3, 2017.

86. Anastasia performed work for Corporate Defendant during the 2017 calendar year.

87. Anastasia performed work for Corporate Defendant during the 2016 calendar year

88. Anastasia performed work for Corporate Defendant during the 2015 calendar year.

89. Corporate Defendant paid Anastasia by the shift.

90. Corporate Defendant did not pay Anastasia by the hour.

91. Anastasia worked approximately 15-25 hours each week she was employed by Corporate Defendant

92. Corporate Defendant paid Anastasia with a check.

93. Anastasia was subject to the Unlawful Tip Credit Practices described herein.

94. Anastasia was subject to the Wage Notice Violations described herein.

95. Anastasia worked some shifts that exceeded 10 hours in length.

96. Corporate Defendant never paid Anastasia an extra hour of pay at then prevailing NYS

Minimum Wage Rate for any shift worked that exceeded 10 hours in length

97. During the Relevant Time Period, Corporate Defendant engaged in a practice of deducting from Anastasia's pay shortages from the cash register.

98. Anastasia never had the power to hire or fire employees, control employee work hours or otherwise control other employee work conditions.

99. When Anastasia worked parties in which Corporate Defendant charged the customers a mandatory gratuity, Corporate Defendant retained all or a portion of the mandatory gratuity that should have been paid to Anastasia.

100.     On information and belief, when Corporate Defendant had an open bar, it failed to pay Anastasia any gratuity for the work she performed for the bartending she performed for the open bar.

**PLAINTIFF MARIA CAPORALE**

101.     Maria started working for Corporate Defendant in or around September 2015.

102.     Maria stopped working for Corporate Defendant in June 2017.

103.     Maria performed work for Corporate Defendant during the 2017 calendar year.

104.     Maria performed work for Corporate Defendant during the 2016 calendar year

105.     Maria performed work for Corporate Defendant during the 2015 calendar year.

106.     Corporate Defendant paid Maria by the shift.

107.     Corporate Defendant did not pay Maria by the hour.

108.     Maria worked approximately 15-25 hours each week she was employed by Corporate Defendant

109.     Corporate Defendant paid Maria with a check.

110.     Maria was subject to the Unlawful Tip Credit Practices described herein.

111.     Maria was subject to the Wage Notice Violations described herein.

112.     Maria worked shifts exceeded 10 hours in time.

Corporate Defendant never paid Maria an extra hour of pay at then prevailing NYS Minimum Wage Rate for any shift worked that exceeded 10 hours in length.

113.     During the Relevant Time Period, Corporate Defendant engaged in a practice of deducting from Maria's pay shortages from the cash register.

114.     Maria never had the power to hire or fire employees, control employee work hours or otherwise control other employee work conditions.

8

115.     When Maria worked parties in which Corporate Defendant charged the customers a mandatory gratuity, Corporate Defendant retained all or a portion of the mandatory gratuity that should have been paid to Maria.

116.     On information and belief, when Corporate Defendant had an open bar, it failed to pay Maria any gratuity for the work she performed for the bartending he performed for the open bar.

**Plaintiff Jasmin Hernandez**

117.     Jasmin started working for Corporate Defendant in or around April 2016.

118.     Jasmin stopped working for Corporate Defendant in June 3, 2017.

119.     Jasmin performed work for Corporate Defendant during the 2017 calendar year.

120.     Jasmin performed work for Corporate Defendant during the 2016 calendar year

121.     Corporate Defendant paid Jasmin by the shift.

122.     Corporate Defendant did not pay Jasmin by the hour.

123.     Corporate Defendant paid Jasmin with a check.

124.     Jasmin worked approximately 15-25 hours each week she was employed by Corporate Defendant

125.     Jasmin was subject to the Unlawful Tip Credit Practices described herein.

126.     Jasmin was subject to the Wage Notice Violations described herein.

127.     Jasmin worked shifts exceeded 10 hours in time.

128.     Corporate Defendant never paid Jasmin an extra hour of pay at then prevailing NYS Minimum Wage Rate for any shift worked that exceeded 10 hours in length.

129.     Jasmin never had the power to hire or fire employees, control employee work hours or otherwise control other employee work conditions.

130.     When Jasmin worked parties in which Corporate Defendant charged the customers a mandatory gratuity, Corporate Defendant retained all or a portion of the mandatory gratuity that should have been paid to Jasmin.

131.     On information and belief, when Corporate Defendant had an open bar, it failed to pay Jessica any gratuity for the work he performed for the bartending she performed for the open bar.

**Plaintiff Jessica Sarfaty**

132.     Jessica started working for Corporate Defendant in or around December 2013.

9

133.        Jessica stopped working for Corporate Defendant in or around June 2015.

134.        Corporate Defendant employed Jessica as a waitress.

135.        Corporate Defendant also employed Jessica as a bartender.

136.        Jessica performed work for Corporate Defendant during the 2015 calendar year.

137.        Jessica performed work for Corporate Defendant during the 2014 calendar year.

138.        Jessica performed work for Corporate Defendant during the 2013 calendar year.

139.        Corporate Defendant paid Jessica by the shift when she was classified as a bartender.

140.        Corporate Defendant did not pay Jessica by the hour when she was classified as a bartender.

141.        Corporate Defendant paid Jessica by the hour when she was classified as a waitress.

142.        Corporate Defendant paid Jessica with a check.

143.        Jessica was subject to the Unlawful Tip Credit Practices described herein.

144.        Jessica was subject to the Wage Notice Violations described herein.

145.        Jessica worked approximately 15-25 hours each week she was employed by Corporate Defendant.

146.        Jessica never had the power to hire or fire employees, control employee work hours or otherwise control other employee work conditions.

147.        On information and belief, Corporate Defendant did not pay Jessica the correct minimum wage for the hours she worked as a waitress.

148.        On information and belief, Corporate Defendant did not pay Jessica the correct minimum wage for the hours she worked as a bartender.

149.        Jessica worked shifts exceeded 10 hours in time.

150.        Corporate Defendant never paid Jessica an extra hour of pay at then prevailing NYS Minimum Wage Rate for any shift worked that exceeded 10 hours in length.

151.        When Jessica worked parties in which Corporate Defendant charged the customers a mandatory gratuity, Corporate Defendant retained all or a portion of the mandatory gratuity that should have been paid to Jessica.

152.        On information and belief, when Corporate Defendant had an open bar, it failed to pay Jessica any gratuity for the work he performed for the bartending he performed for the open bar.

153.        On information and belief, when Corporate Defendant had an open bar, it failed to

pay Jessica any gratuity for the work she performed for the waitressing she performed for the open bar.

**Plaintiff Monique Mazzei**

154.　　Monique started working for Corporate Defendant in or around October 2015.

155.　　Monique stopped working for Corporate Defendant in or around August 2017.

156.　　Corporate Defendant employed Monique as a waitress.

157.　　On occasion, Corporate Defendant assigned Monique to work as a bartender.

158.　　Corporate Defendant also assigned Monique to work as a hostess, which is a non-tipped position.

159.　　Monique performed work for Corporate Defendant during the 2017 calendar year.

160.　　Monique performed work for Corporate Defendant during the 2016 calendar year.

161.　　Monique performed work for Corporate Defendant during the 2015 calendar year.

162.　　Corporate Defendant paid Monique by the hour at all times.

163.　　From approximately October 2015 to September 2016, Corporate Defendant paid Monique in cash "off the books". During this time, Monique did not receive a paystub, was not paid a direct wage at all, and was not paid a NYS Spread of Hours premium.

164.　　Starting in or around September, 2016, Corporate Defendant paid Monique with a check.

165.　　Monique was subject to the Wage Notice Violations described herein.

166.　　Monique worked approximately 15-25 hours each week she was employed by Corporate Defendant.

167.　　Monique worked shifts exceeded 10 hours in time.

168.　　Corporate Defendant never paid Monique an extra hour of pay at then prevailing NYS Minimum Wage Rate for any shift worked that exceeded 10 hours in length

169.　　Monique never had the power to hire or fire employees, control employee work hours or otherwise control other employee work conditions.

170.　　On information and belief, Monique was not paid the appropriate minimum wage for the hours she worked when Corporate Defendant employed her.

171.　　When Monique worked parties in which Corporate Defendant charged the customers a mandatory gratuity, Corporate Defendant retained all or a portion of the mandatory gratuity that should have been paid to Monique.

172.　　On information and belief, when Corporate Defendant had an open bar, it failed to

pay Monique any gratuity for the work she performed for the work she performed as a bartender or waitress for the open bar.

**Plaintiff Matt Cam**

173.     Matt started working for Corporate Defendant in or around February 2012.

174.     Matt stopped working for Corporate Defendant in or around December 2015.

175.     Corporate Defendant employed Matt as a bartender.

176.     Corporate Defendant also required Matt to perform non-tipped employee work such as supervising the hotel lobby.

177.     Matt performed work for Corporate Defendant during the 2015 calendar year.

178.     Matt performed work for Corporate Defendant during the 2014 calendar year.

179.     Matt performed work for Corporate Defendant during the 2013 calendar year.

180.     Matt performed work for Corporate Defendant during the 2012 calendar year.

181.     Corporate Defendant paid Matt by the shift when he was a bartender.

182.     Corporate Defendant did not pay Matt by the hour when he was a bartender.

183.     Matt worked approximately 15-25 hours each week he was employed by Corporate Defendant

184.     Corporate Defendant paid Matt with a check.

185.     Matt was subject to the Unlawful Tip Credit Practices described herein.

186.     Matt was subject to the Wage Notice Violations described herein.

187.     On information and belief, Matt worked an average of 2 shifts each week he was employed by Corporate Defendant.

188.     Matt worked shifts exceeded 10 hours in time.

189.     Corporate Defendant never paid Matt an extra hour of pay at then prevailing NYS Minimum Wage Rate for any shift worked that exceeded 10 hours in length.

190.     Matt never had the power to hire or fire employees, control employee work hours or otherwise control other employee work conditions.

191.     On information and belief, Corporate Defendant did not pay Matt the correct minimum wage for the hours he worked.

192.     On information and belief, Corporate Defendants' time records concerning Matt's work as a bartender are inaccurate because the tip allocation reported on Matt's time and pay

records were not properly allocated between waitresses on the shift.

193.    On information and belief, when Matt worked parties in which Corporate Defendant charged the customers a mandatory gratuity, Corporate Defendant retained all or a portion of the mandatory gratuity that should have been paid to Matt.

194.    On information and belief, when Corporate Defendant had an open bar, it failed to pay Matt any gratuity for the work he performed as a bartender for the open bar.

**Plaintiff Noel Pugliese**

195.    Noel started working for Corporate Defendant in or around August 2013.

196.    Noel stopped working for Corporate Defendant in or around August 2014.

197.    Corporate Defendant employed Noel as a bartender.

198.    Noel performed work for Corporate Defendant during the 2014 calendar year.

199.    Noel performed work for Corporate Defendant during the 2013 calendar year.

200.    Corporate Defendant paid Noel by the shift when she was a bartender.

201.    Corporate Defendant did not pay Noel by the hour when she was a bartender.

202.    Corporate Defendant paid Noel with a check.

203.    Noel worked approximately 15-25 hours each week she was employed by Corporate Defendant

204.    Noel was subject to the Unlawful Tip Credit Practices described herein.

205.    Noel was subject to the Wage Notice Violations described herein.

206.    On information and belief, Noel worked an average of 2 shifts each week she was employed by Corporate Defendant.

207.    Noel worked shifts exceeded 10 hours in time.

208.    Corporate Defendant never paid Noel an extra hour of pay at then prevailing NYS Minimum Wage Rate for any shift worked that exceeded 10 hours in length

209.    Corporate Defendant never paid Noel an extra hour of pay at then prevailing NYS Minimum Wage Rate for any shift worked that exceeded 10 hours in length.

210.    Noel never had the power to hire or fire employees, control employee work hours or otherwise control other employee work conditions.

211.    On information and belief, Corporate Defendant did not pay Noel the correct minimum wage for the hours she worked.

212.    On information and belief, when Noel worked parties in which Corporate

13

Defendant charged the customers a mandatory gratuity, Corporate Defendant retained all or a portion of the mandatory gratuity that should have been paid to Noel.

213.     On information and belief, when Corporate Defendant had an open bar, it failed to pay Noel any gratuity for the work she performed as a bartender for the open bar.

### RETALIATION
### APPLICABLE TO PLAINTIFFS BONDI, CAPARALE AND HENRANDEZ

214.     On June 3, 2017, Plaintiffs Bondi, Caparale and Hernandez were working for the Defendants.

215.     Plaintiffs Bondi, Caparale and Hernandez began discussing how their pay was incorrect, and decided that they needed to discuss the incorrect pay with Michael Defalco.

216.     Plaintiffs Bondi, Caparale and Hernandez agreed that Anastasia should speak to Michael on their behalf to try and rectify the improper pay practices.

217.     Plaintiff Bondi went to Defalco's office to discuss the improper pay. She complained to Defalco that Plaintiffs Bondi, Caparale and Hernandez were not being properly compensated.

218.     In response, Michael Defalco lost his temper, and said that he doesn't like greedy bitches, and told Plaintiff Bondi to gather Plaintiffs Caparale and Hernandez to meet with him in his office.

219.     Plaintiff Bondi left Michael's office, and went to the bar to gather Caparale and Hernandez. Maria and Bondi began speaking with Maria about the unlawful pay practices and what Michael Defalco told her in his office.

220.     While speaking with Maria, Michael came to the bar and began screaming at Anastasia.

221.     Michael called Anastasia, Maria and Jazmine a bunch of greedy bitches.

222.     Michael then grabbed Anastasia by the arm and began physically pulling her from behind the bar toward his office.

223.     Michael engaged in this conduct in front of a room full of customers.

224.     Anastasia began screaming for Michael to stop.

225.     Michael then fired Plaintiffs Bondi, Caparale and Hernandez.

226.     When Michael fired Plaintiffs Bondi, Caparale and Hernandez, he told them that if they don't like their pay they can get the fuck out because he can get people to easily replace them.

### Collective Action Allegations

227.     Plaintiffs bring this lawsuit under 29 U.S.C §216(b) as a collective action on behalf of the FLSA Class defined above.

228.     Plaintiffs desire to pursue their FLSA claims on behalf of any individuals who opt-in to this action under 29 U.S.C. §216(b).

229.     Plaintiffs and the FLSA Class are "Similarly Situated", as that term is used in 29 U.S.C.§216(b), because, inter alia, all such individuals worked as food service workers under Corporate Defendant's previously described common pay practices, and because of such practices, were not paid the full and legally-mandated minimum wage for hours worked. Resolution of this action requires inquiry into common facts, including, inter alia, Corporate Defendant's common compensation, timekeeping and payroll practices.

230.     Specifically, Corporate Defendant typically paid Plaintiffs and the FLSA Class by using an unlawful tip credit, failing to provide employees with proper notices of the pay structure, failing to pay employees the proper direct wage, failing to pay employees overtime and minimum wage, failing to pay a spread of hours premium and not maintaining proper record of employee work hours.

231.     The Similarly-Situated employees are known to Corporate Defendant, are readily identifiable, and may be located through Corporate Defendant's records and the records of any payroll company that Corporate Defendant uses. Corporate Defendant employs FLSA Class Members through the State of New York. These similarly-situated employees may be readily notified of this action through direct U.S mail and/or other appropriate means, and allowed to opt into it pursuant to 29 U.S.C. §216(b), for the collective adjudication of their claims for overtime compensation, liquidated damages, interest, and attorneys' fees and costs under the FLSA.

## Class Action Allegations

232.     Plaintiffs bring this action as a class action under Fed. R. Civ. P. 23 on behalf of themselves and the New York Class defined above.

233.     The members of the New York Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than 40 members of the New York Class.

234.     Plaintiffs will fairly and adequately represent and protect the interests of the New York Class because there is no conflict between the claims of Plaintiffs and those of the New York Class, and Plaintiffs' claims are typical of the claims of the New York Class. Plaintiff's counsel is competent and experienced in representing multi-plaintiff wage and hour claims such as this one.

235.     There are questions of law and fact common to the proposed New York Class, which predominate over any questions affecting only individual Class members, including, without limitation: whether Corporate Defendant has violated and continues to violate the laws of New York through its policy or practice of not paying its employees for all hours worked, at applicable minimum wages and providing proper and adequate wage notices.

236.     Plaintiff's claims are typical of the claims of the New York Class in the following ways, without limitation: (a) Plaintiffs are members of the New York Class, (b) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the New York Class, (c) Plaintiffs' claims are based on the same legal and remedial theories as those of the New York Class and involve similar factual circumstances, (d) there are no conflicts between the interests of Plaintiff and the New York Class members; and (e) the injuries suffered by the Plaintiffs is similar to the injuries suffered by

the New York Class members.

237.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the New York Class predominate over any questions affecting only individual Class Members.

238.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The New York Class is readily identifiable from Corporate Defendant's own employment records. Prosecution of separate actions by individual members of the New York Class would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Corporate Defendant.

239.    A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the New York Class members, while substantial, are not great enough to enable them to maintain separate suits against Corporate Defendant. Each individual class member might not have substantial enough damages to justify private counsel bringing an individual claim on behalf of such individual class member. Accordingly, this is the type of case and the type of circumstances for which Rule 23 was enacted.

240.    Without a class action, Corporate Defendant will retain the benefit of its wrongdoing, which will result in further damages to Plaintiff, the New York Class. Plaintiff envisions no difficulty in the management of this action as a class action.

## **FIRST CAUSE OF ACTION**
### **(Assault & Battery)**
### **(As Applicable to Plaintiff Anastasia Bondi)**

241.    Plaintiffs repeat, re-allege and reincorporate all allegations as though fully set forth herein.

242.    Anastasia had a right to remain free from intentional unwanted physical contact and from being subjected to intentional and unwanted physical threats of physical harm.

243.    Michael Defalco intentionally made unwanted offensive physical contact with Anastasia when he violently grabbed her arm and began pulling her away from the bar in the Defendants establishment.

244.    Michael Defalco  intentionally attempted or threatened to inflict injury upon Anastasia immediately prior to grabbing Anastasia's arm when he was screaming at her in a very close physical proximity in front of Defendants' customers.

245.    Michael Defalco had the apparent ability to cause the physical harm to Anastasia.

246.    Anastasia had a reasonable sense of apprehension that Michael Defalco was going to make unwanted offensive physical contact with her.

16

247.     Michael was acting within the scope of his employment when he assaulted and battered Anastasia.

248.     Corporate Defendant is vicariously liable for Defalco's tortious acts set forth herein.

249.     By Michael Defalco's conduct, Anastasia suffered physical and emotional harm.

## SECOND CAUSE OF ACTION
### (Retaliation)
### (NY STATE)
### (As applicable only to Plaintiffs Bondi, Caporale and Hernandez)

250.     Plaintiffs repeat, re-allege and reincorporate all allegations as though fully set forth herein.

251.     The anti-retaliation protections of NY Lab. Law §215 and its supporting regulations apply to Defendants and protect the Plaintiffs.

252.     Defendants retaliated against the Plaintiffs when they terminated Plaintiffs' employment when they complained to Michael Defalco about pay practices that the Plaintiffs reasonably believed were unlawful.

253.     By Defendants' knowing or intentional termination of the Plaintiffs' employment for complaining about unlawful pay practices, the Defendants violated NY Lab. Law §215, and the supporting New York State Department of Labor Regulations.

254.     Due to Defendants' violations of the NY Lab. Law §215, Plaintiffs are entitled to recover lost wages, liquidated damages, reasonable attorneys' fees and costs of the action, pre-judgment and post-judgment interest and statutory damages from the Defendants.

## THIRD CAUSE OF ACTION
### (Retaliation)
### (Federal)
### (As applicable only to Plaintiffs Bondi, Caporale and Hernandez)

255.     Plaintiffs repeats, re-alleges and reincorporates all allegations as though fully set forth herein.

256.     The anti-retaliation protections of 29 U.S.C §215 and its supporting regulations apply to Defendants and protect the Plaintiffs.

257.     Defendants retaliated against the Plaintiffs when they terminated Plaintiffs' employment when they complained to Michael Defalco about pay practices that the Plaintiffs reasonably believed were unlawful.

258.     By Defendants' knowing or intentional termination of the Plaintiffs' employment for complaining about unlawful pay practices, the Defendants violated 29 U.S.C §215, and the supporting New York State Department of Labor Regulations.

259.     Due to Defendants' violations of the NY Lab. Law §215, Plaintiffs are entitled to

recover lost wages, liquidated damages, reasonable attorneys' fees and costs of the action, pre-judgment and post-judgment interest and statutory damages from the Defendants.

## FOURTH CAUSE OF ACTION
### (Failure to pay wages)
### NY Lab. Law §191

260.     Plaintiffs repeat, re-allege and reincorporate all allegations as though fully set forth herein.

261.     Under NY Lab. Law §191, an employer is required to pay an employee within one week of the services performed by the employee.

262.     Defendants failed to pay Plaintiffs their wages as required by NYLL §191 by not paying wages within the statutory time-period.

263.     On information and belief, Defendants engaged in an ongoing practice of failing to remit to Plaintiffs all wages due as a result of an unlawful tip-credit, failing to provide a spread of hours premium and withholding gratuities.

264.     Because of Defendants' unlawful withholding of wages, Plaintiffs suffered harm.

## FIFTH CAUSE OF ACTION
### (Failure to provide wage notices)
### (NY Lab. Law §198(1-b) & NY Lab. Law §198(1-d))

265.     Plaintiffs repeat, re-allege and reincorporate all allegations as though fully set forth herein.

266.     Pursuant to the Wage Theft Prevention Act, New York Labor Law, §195, Defendants willfully failed to furnish Plaintiffs with a required notice containing the following information:

     i.   the rates or rates of pay and basis thereof,

     ii.  whether paid by the hour, shift, day, week, salary, piece, commission or other allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;

     iii. the regular pay designated by the employer in accordance with NYLL §191;

     iv. the name of the employer;

     v.   Any "doing business as" names used by the employer;

     vi. The physical address of the employer's main office or principal place of business, and a mailing address, if different;

     vii. The telephone number of the employer

267.     Defendants willfully failed to furnish Plaintiffs with an accurate statement of wages as required by NYLL §195(3), containing the dates of work covered by that payment of wages;

18

name of the employee; name of the employer; address and phone number of employer; rate or rates of pay and basis thereof; whether paid by hour, shift, day, week, salary, piece, commission, or other; gross wages; hour rate or rates of pay, and overtime rates of pay; the number of hours worked, including over time hours; deductions, allowances, and net wages.

268.    Due to Defendants' violation of NYLL §195(1), Plaintiffs are entitled to recover from Defendants liquidated damages of $50 per each workday that the violation occurred, up to a maximum of $5,000, reasonable attorney fees, and costs and disbursements of this action, pursuant to NYLL § 198(1-b).

269.    Defendants failed to provide Plaintiffs a statement with each payment of wages that sets forth Plaintiffs' hours worked, rates of pay, gross wages, credits claimed (for tips, meals and lodging) if any, deductions and net wages.

270.    Due to Defendants' violation of NYLL §195(3), Plaintiffs are entitled to recover from Defendants liquidated damages of $250 per each workday that the violation occurred, up to a maximum of $5,000, reasonable attorney fees, and costs and disbursements of this action, pursuant to NYLL § 198(1-d).

## SIXTH CAUSE OF ACTION
**(Failure to pay minimum wage)**
**(Federal)**
**29 U.S.C §206**

271.    Plaintiffs repeat, re-allege and reincorporate all allegations as though fully set forth herein.

272.    The minimum wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.,* and the supporting federal regulations, apply to Defendants and protect the Plaintiffs.

273.    Defendants failed to pay Plaintiffs minimum wages to which they are entitled under the FLSA and the supporting Federal Regulations.

274.    Because of Defendants' unlawful acts, Plaintiffs have been deprived of minimum compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the FLSA.

275.    Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Complaint are unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs.

276.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

## SEVENTH CAUSE OF ACTION
**(Failure to pay minimum wage)**
**(NY STATE)**
**12 N.Y.C.R.R §146-1.2**

277.     Plaintiffs repeat, re-allege and reincorporate all allegations as though fully set forth herein.

278.     The minimum wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect the Plaintiffs.

279.     Defendants failed to pay Plaintiffs minimum wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

280.     By Defendants' knowing or intentional failure to pay Plaintiffs minimum wages for hours worked, they have willfully violated NYLL Art. 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations.

281.     Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover unpaid minimum wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest from the Defendants.

### EIGTH CAUSE OF ACTION
**(Failure to pay Spread of Hours)**
**(NY STATE)**

282.     Plaintiffs repeat, re-allege and reincorporate all allegations as though fully set forth herein.

283.     The spread of hours provisions of 12 NYCRR §146-1.6 and its supporting regulations apply to Defendants and protect the Plaintiffs.

284.     Defendants failed to pay Plaintiffs an extra hour of pay at the then prevailing NYS minimum wage rate for each shift they worked that exceeded 10 hours in length.

285.     By Defendants' knowing or intentional failure to pay Plaintiffs an extra hour of pay at the then prevailing NYS minimum wage rate for each shift they worked that exceeded 10 hours in length, they have willfully violated 12 NYCRR §146-1.6, and the supporting New York State Department of Labor Regulations.

286.     Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover unpaid minimum wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest from the Defendants.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs seek the following relief:

A.     An Order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. §216(b);

B.     Prompt notice, pursuant to 29 U.S.C. §216(b), of this litigation to all potential FLSA Class Members;

C.     An Order permitting this litigation to proceed as a class action under Fed. R. Civ. P. 23 on behalf of the New York Class;

D.      An award of compensatory, pecuniary and non-pecuniary damages in an amount to be determined by a trier of fact;

E.      Unpaid wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

F.      Unpaid wages pursuant to NYLL Art. 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor regulations, and an additional and equal amount as liquidated damages pursuant to NYLL § 663;

G.      Unpaid wages pursuant to NYLL §191 and an additional and equal amount as liquidated damages pursuant to the NYLL;

H.      Unpaid wages pursuant to 12 NYCRR §146-1.6 as and for a spread of hours premium and an equal amount as liquidated damages for each day in which the Plaintiffs worked a shift that spans 10 hours in length or more.

I.      Statutory damages equal to $50 for each workday up to a maximum of $5,000 for each workday Plaintiff was not provide a wage notice pursuant to NYLL §198(1-b);

J.      Statutory damages equal to $250 for each workday up to a maximum of $5,000 for each workday Plaintiff was not provide a statement of wages pursuant to NYLL §198(1-d);

K.      Pre-judgment interest and post-judgment interest;

L.      Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under NYLL Art. 6, §§ 190 *et seq.,* NYLL Art. 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor regulations;

M.      An injunction requiring Defendants to pay all statutorily required wages pursuant to the NYLL and an order enjoining Defendant from continuing its unlawful policies and practices as described herein;

N.      Reasonable attorney fees and costs of the action;

O.      Pre-judgment interest and post judgment interest;

P.      Such other relief as this Court shall deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Fed. R. Civ. P., Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Dated:  White Plains, New York
        September 22, 2018

EL-HAG & ASSOCIATES, P.C

Jordan El-Hag, Esq.
777 Westchester Ave, Suite 101
White Plains, N.Y, 10604
(914) 218-6190 (p)
(914) 206-4176 (f)
Jordan@elhaglaw.com
www.elhaglaw.com