UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STACI BONDI, *et al.*,

                    Plaintiff,

              v.

MICHAEL DEFALCO, *et al.*

                    Defendants.

Case No. 17-CV-5681 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

Plaintiffs Anastasia Bondi ("Bondi"), Maria Caporale ("Caporale"), Jasmine Hernandez ("Hernandez"), Jessica Sarfaty ("Sarfarty"), Monique Mazzei ("Mazzei"), Matt Cam ("Cam"), and Noel Pugliese ("Pugliese") (collectively, "Plaintiffs") bring this Action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Law § 190, *et seq.* ("NYLL"), against Defendants New Rochelle Hotel Associates ("NRHA"), NHRA General Manager Michael DeFalco ("DeFalco"), NHRA Owner Colby Brock Gualano ("Gualano") and NHRA Owner Peter Brock ("Brock") (collectively, "Defendants"). (*See* December 7, 2018 Decision & Report and Recommendation ("R&R") 1–2 (Dkt. No. 114).)

Plaintiffs and the Defendants ("the Parties") have jointly requested preliminary approval of a proposed FLSA Class Settlement, (Decl. of Jordan El-Hag, Esq. ("El-Hag Decl."), Ex. 3 ("Class Settlement") (Dkt. No. 129-3)), and approval of a Notice of Proposed Settlement of Class Action, (El-Hag Decl., Ex. 4 ("Class Notice") (Dkt. No. 129-4)). (*See generally* "Approval Request" (Dkt. No. 132).) For the following reasons the request is granted.

I. Background

Plaintiffs Bondi, Caporale, and Hernandez initiated this Action by filing the initial complaint on July 26, 2017. (*See* Dkt. No. 1.) Through three amended complaints, Plaintiffs added four additional named plaintiffs and one opt-in plaintiff. (*See* R&R 2–3.) In these complaints, Plaintiffs allege that Defendants (1) collected tips and failed to provide them to the tipped employees (2) unlawfully paid employees using tips by failing to provide the legally mandated notices prior to doing so, (3) failed to comply with statutory wage notices mandated by federal and state law, (4) failed to pay employees a spread of hours premium under the NYLL for working more than 10 hours in a day. (*See id.* 4–5; *see also* Pls.' Mem. Of Law in Supp. of Mot. for Preliminary Approval of a Fed. R. Civ. P. 23 Class Action Settlement ("Pls.' Mem.") 2.)

On November 11, 2018, Plaintiffs moved under the FLSA to certify a collective class of tipped employees who worked at the Defendants' restaurant, and under Fed. Civ. P. 23 for class certification of the Plaintiffs' claims under the New York Labor Law. (Dkt. Nos. 99–110.) On December 7, 2018, Magistrate Judge Lisa M. Smith issued a report and recommendation that Plaintiffs' motion for collective and class certification be denied, without prejudice to renewal upon a proper showing. (*See* R&R 37.) On February 6, 2019, the Court adopted Magistrate Judge Smith's report and recommendation. (*See* Dkt. No. 116.)

After denial of Plaintiffs' motion to certify, the Parties negotiated the terms of several agreements: a confidential settlement agreement with respect to three original plaintiffs, Bondi, Caporale and Hernandez; a FLSA settlement with respect to Mazzei, who alleged individual claims under the FLSA and NYLL on grounds different from that of the class ("Mazzei Settlement" (El-Hag Decl., Ex. 1 (Dkt. No. 130-1)); and the instant proposed FLSA Class Settlement, (*see* Class Settlement). (*See generally* Approval Request.) On June 4, 2019, the

2

Court approved the Mazzei Settlement. (*See* Dkt. No. 131.) The Court now considers the proposed Class Settlement, as well as the Parties' proposed Class Notice.

## II. Discussion

### A. Standard of Review

Under Fed. R. Civ. P. 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute." "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." *See* Fed. R. Civ. P. 41(a)(2). The Second Circuit has confirmed that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (quotation marks omitted), *cert. denied*, 136 S. Ct. 824 (2016).[1] Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable.'" *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015); *see also Velasquez v. SAFI-G, Inc.*, No. 15-CV-3068, 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015) (same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a

---

[1] Although not relevant here, the Second Circuit has explained the authority of the Department of Labor to approve settlements, noting "the Secretary of Labor has the authority to 'supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under'" certain portions of the FLSA, in which case "'[t]he agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have . . . to such . . . unpaid overtime compensation and' liquidated damages due under the FLSA." *Cheeks*, 796 F.3d at 201 n.1 (second alteration in original) (quoting 29 U.S.C. § 216(c)).

position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As a number of courts have recognized, although a court should consider the totality of the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotation marks omitted); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same). Conversely, factors which weigh against finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014

4

WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).  Making this determination "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (quotation marks omitted).[2]  To this end, courts require information surrounding "the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award." *Id.* (first alteration in original) (quotation marks omitted) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015)).

Similarly, while a district court has the discretion to approve a proposed class action settlement, *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998), the law generally favors compromise and settlement of class action suits, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  Moreover, preliminary approval of a proposed class action settlement is only "the first in a two-step process" required by Fed. R. Civ. P. 23(e) before a class action may be settled.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 7625708, at *2 (S.D.N.Y. Dec. 21, 2016) (citation and quotation marks omitted).  Accordingly, "[p]reliminary approval is typically granted where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class

---

[2] This approach is consistent with the requirement that "FLSA settlements . . . not be confidential," in part because "sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177–78 (S.D.N.Y. 2015) (alterations and quotation marks omitted).

and falls within the range of possible approval." *Escort v. Princeton Info. Ltd.*, 2017 WL 1194684, at *2 (S.D.N.Y. Mar. 30, 2017) (citation and quotation marks omitted). As the Second Circuit has explained, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quotations omitted). It is, therefore, "unusual to deny an application for preliminary approval of a class action settlement agreement." *Brown v. Sega Amusements, U.S.A.,* Inc., No. 13-CV-7558, 2015 WL 1062409, at *1 n.2 (S.D.N.Y. Mar. 9, 2015); *see also Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d 297, 314 (W.D.N.Y. 2016) (same). However, "denial is appropriate where the settlement agreement contains obvious deficiencies." *Oladapo v. Smart One Energy, LLC*, No. 14-CV-7117, 2017 WL 5956907, at *7 (S.D.N.Y. Nov. 9, 2017), *report and recommendation adopted*, 2017 WL 5956770 (S.D.N.Y. Nov. 30, 2017); *see also Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007) (same).

    B.  Analysis

        1.  The Proposed Class Settlement

    Under the proposed Class Settlement, Defendants agree to pay up to $193,000 ("the Settlement Amount") into a fund ("the Fund") to be paid out to Class Members and Plaintiffs' Counsel, and which will thereby resolve "all wage and hour claims that could have been asserted . . . on behalf of the Class Member in the Lawsuit," as of the date the Court issues a preliminary approval order. (Class Settlement ¶¶ 3.1.A, 4.1.A.) Of this total sum, Plaintiffs' counsel will receive $64,333.33 in legal fees; Pugliese, Cam and Sarfaty will each receive $10,000 as service awards; Mazzei will receive $2,000 as a service award; a Settlement Claims Administrator

("SCA") will receive an estimated $12,739 for managing the Notice and distributions of funds;[3] and the remainder ("the Net Settlement Fund") of $83,927.67 will be available to individual Class Members. (*Id.* ¶¶ 3.2.A, 3.3.A, 3.3.C, 3.4; Approval Request 2.)[4]  Class Members will be paid a percentage share of the Net Settlement Fund based on "the difference between the tipped wages paid for actual hours worked" and "the applicable New York minimum wage rage." (Class Settlement ¶ 3.4.B.i.)  This figure will be determined based on "actual payroll information reflecting tip credit wages paid." (Pls.' Mem 6.)  Thus, "if an individual['s] percentage of the potential unpaid wages pool is equal to 5%, then that person would have the ability to submit a claim to receive 5% of the Net Settlement Fund." (*Id.*)  Additionally, Class Members will each receive a minimum allocation of $50.  (Class Settlement ¶ 3.4.B.ii.)

Within 15 days of this Court's approval of the Class Settlement, NHRA will provide the SCA with the names, contact information and social security numbers of all Class Members.  (*Id.* ¶ 2.5.A.)  Within 15 days of that provision of information, the SCA will mail to all class members, the approved Notice.  (*Id.* ¶ 2.5.B.)  Class members will have sixty days to "opt out" or to submit objections to the Class Settlement.  (*Id.* ¶¶ 2.6.B, 2.7.A.)  After the close of the notice period, Plaintiffs' Counsel will prepare and submit to the Court a Motion for Final Approval (which Defendants will not oppose), and the Court will hold a Fairness Hearing.  (*Id.* ¶ 2.8.B.)  If the Court does not enter a Final Approval Order at that time, the lawsuit "will proceed as if there was no attempt at settlement."  (*Id.* ¶ 2.8.C.)

---

[3] The Parties have designated American Legal Services LLC to serve as the SCA.  (Class Settlement ¶ 2.3.A)

[4] Plaintiffs assert, and Defendants do not dispute, that NRHA employed 29 bartenders and 103 food service workers during the class period, (R&R 31), the class consists of a maximum of approximately 132 individuals.

2.  The Settlement Amount

The $193,000.00 Settlement Amount reflects approximately two-thirds of Plaintiffs'

estimated back wages of $286,000.  (Approval Request 2–3.)  The $286,000 reflects Plaintiffs'

estimated maximum NYLL recovery of $286,000 for the entire class (although it does not

include prejudgment interest of another approximately $154,440.)  (*Id.* 2–3.)[5]  Additionally,

Plaintiffs estimate only marginal potential FLSA damages (approximately $411) because

Defendants have paid a tip credit exceeding the FLSA minimum since at least December 31,

2015.  (*Id.*)  The Parties represent that they have "determined the total amount of potential

alleged unpaid wages based on the difference between the tip credit wages paid and the

applicable non-tip credit minimum wage rate for each Class Member . . . based on the

Defendants' pay records and agreed upon assumptions for settlement purposes within the alleged

class period from July 26, 2011 through August 15, 2017."  (Pls.' Mem. 6.)

In light of the estimated back wages and total potential recovery, the Court concludes that

the Settlement Amount is reasonable.  While the Settlement Amount is approximately one-third

of Plaintiff' optimistic, best-case scenario, recovery (including prejudgment interest), it equals at

least two-thirds of Plaintiffs' total unpaid wages.  Precedent confirms that securing one-third of a

maximum recovery and two-thirds of lost wages is generally deemed fair, reasonable, and

adequate.  *See Khan v. Dunwoodie Gas Station, Inc.*, No. 19-CV-5581, 2020 WL 1166180, at *3

(S.D.N.Y. Mar. 10, 2020) (explaining that "two-thirds of a potential total recovery is generally

deemed fair"); *Garcia v. Cloister Apt. Corp.*, No. 16-CV-5542, 2019 WL 1382298, at *2

(S.D.N.Y. Mar. 27, 2019) ("[P]laintiffs' net settlement . . . represents more than 28% of their

---

[5] The $286,000 also does not include potential New York Wage Theft Prevention Act
("WTPA") penalties of approximately $10,000 (plus costs and fees), which, in any event, the
Parties acknowledge are largely derivative of Plaintiffs' other claims.  (Approval Request 3.)

total alleged damages and more than 72% of their claimed unpaid wages. This percentage is reasonable, especially given plaintiffs' potential obstacles to recovery."); *Felix v. Breakroom Burgers & Tacos*, No. 15-CV-3531, 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (approving settlement amount of less than 25% of the maximum possible recovery). Additionally, as the Parties note, Plaintiff might not prevail on all claims at trial, or even succeed in certifying a class. (Approval Request 2, 4–5.) Indeed, the Court has already denied class certification once in this case. (*See* Dkt. No. 116.) Through settlement, however, Plaintiff will obtain most of his potential recovery and will avoid the time, costs and hazards of litigation. *See Rojas v. Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) (noting that "settlement [protects] the Parties from the risks associated with going to trial"); *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 342 (S.D.N.Y. 2016) (finding settlement sum fair "in light of the legal and evidentiary challenges that would face the plaintiffs in the absence of a settlement").

### 3. Good Faith

Next, the Court is also satisfied that the Class Settlement was negotiated competently, in good faith, at arms' length, and that there was no fraud or collusion. The Parties have represented such in their Approval Request, and Plaintiffs' counsel has extensive experience representing classes of plaintiffs in claims for unpaid wages under the FLSA and NYLL. (*See* Approval Request 4, 6.).

### 4. Release Provision

The Court also finds that the proposed Class Settlement's release provision is appropriately narrow. "[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will not approve settlement agreements that contain overly broad release provisions

that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *id.* at 206 (internal quotation marks omitted) (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."); *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting a settlement agreement where "the parties' release language . . . include[d] 'actions and/or claims against the [d]efendants, known or unknown, which [the plaintiff] may have as of the date of this [a]greement including but not limited to any alleged violation of any federal, state or local law, regulation, rule or ordinance which relates in any way to [the] [d]efendants' payment of wages to [the] [p]laintiff during [the] [p]laintiff's employment with [the] [d]efendants' "); *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (rejecting a settlement agreement that, in effect, "waive[d] any possible claims against [the] [d]efendants—including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues").

Here, the Settlement Agreement provides that any Class Member who does not file an Opt-Out Statement releases Defendants (and their affiliated persons and entities) from "all wage and hour claims that could have been asserted under federal or state laws by and on behalf of the Class Members in the Lawsuit as of the date the Court issues the Preliminary Approval Order." (Class Settlement ¶ 4.1.A.)  The release provision further explains that the release applies to "all claims under federal or New York State laws for minimum or overtime wage, unreimbursed expenses, spread of hours, any related wage and hour claims," and specifies several statutory

10

claims that are being waived, including "claims for gratuities under NYLL § 196-d, NYLL § 195 penalties," and more. (*Id.*) Additionally, the Class Settlement provides that Class Representatives (Cam, Pugliese, Sarfaty, and Mazzei) will release Defendants from a far larger category claims—indeed, *all* actions or claims (including, for example, Title VII and New York State Human Rights Law claims) based on "any conduct occurring up to and including the date" of execution of the Class Settlement—in consideration for their receipt of their respective services fees. (*Id.* ¶ 4.1.C; Pls.' Mem. 5)

These release provisions are appropriate under applicable law. As noted, in general, "any release provision must be limited to the claims at issue in this action." *Lazaro-Garcia*, 2015 WL 9162701, at *2; *see also Larrea v. FPC Coffees Realty Co., Inc.*, No. 15-CV-1515, 2017 WL 1857246, at *3 (S.D.N.Y. May 5, 2017) ("[A] number of judges in this District refuse to approve any FLSA settlement unless the release provisions are limited to the claims at issue in this action." (internal quotation marks omitted)). Thus, courts have held that in a FLSA settlement, the release must generally be limited only to wage and hour claims. *See Cheeks*, 796 F.3d at 206 (explaining that courts will not approve settlement agreements that waive "claims that have no relationship whatsoever to wage-and-hour issues"); *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751, 2017 WL 2778029, at *3 (E.D.N.Y. June 26, 2017) (approving release that, "while broad, . . . relates specifically to wage and hour issues without encompassing, for example, prospective discrimination claims"). Accordingly, with respect to the Class Members, because the Class Settlement specifies that the release applies only to "*all wage and hour claims* that could have been asserted under federal or state laws," (Class Settlement ¶ 4.1.A (emphasis added)), the release provision is appropriately narrow.

11

With respect to the Class Representatives, the release provision is far broader, releasing Defendants from "any actions, suits, debts, dues . . . and demands whatsoever, in law and equity, which they may have against [Defendants] as of the date of execution of this Agreement, whether known or unknown . . . ." (Class Settlement ¶ 4.1.B.)  In general, courts in the Second Circuit reject such broad, general releases. *See Flood*, 2015 WL 4111668, at *2 (rejecting a settlement agreement that effectively "waive[d] any possible claims against [the] [d]efendants"); *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y 2016) (citation and quotation marks omitted) (explaining that "courts in this District routinely reject release provisions that waive practically any possible claim against the defendant").  However, such releases are deemed acceptable where they "serve as consideration for service awards for Class Representatives." *Corea v. Café Spice, Inc.*, No. 18-CV-10354, March 5, 2020 Order 9 (Dkt. No. 153 (18-CV-10354)); *see also Bryant v. Potbelly Sandwich Works, LLC*, No, 17-CV-7638, November 1, 2019 Order (Dkt. No. 112 (17-CV-7638)) (approving a "Settlement Agreement and Release" containing such a release in consideration for a service award (Dkt. No. 110 (17-CV-7638)).  Here, the Class Representatives' general release of all claims against Defendants is expressly offered as "consideration for the payment of the Service Award to the Class Representatives." (Class Settlement ¶ 4.1.B.)  Accordingly, because Plaintiffs have provided a "sound explanation for how this broad release benefits the [Class Representatives]," *Gurung*, 226 F. Supp. 3d at 228, the Court deems this release reasonable despite its breadth.

### 5. Attorneys' Fees

Finally, the Court finds that the attorneys' fees requested by Plaintiffs' Counsel are reasonable.  Under both FLSA and the New York Labor Law, a successful plaintiff—including one who settles—is entitled to attorneys' fees. *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-

1906, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b),

N.Y. Labor Law §§ 198, 663(1)).  In the Second Circuit, courts may calculate attorneys' fees

using one of two methods: the "lodestar" method or the "percentage of the fund" method.  *See*

*McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).  "Under the percentage-of-

the-fund method, the attorneys are awarded a reasonable percentage of the common fund."

*Lizondro-Garcia*, 2015 WL 4006896, at *3.  "Under the lodestar method, 'the district court

scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and

then multiplies that figure by an appropriate hourly rate.'"  *Ortiz v. Chop't Creative Salad Co.*

*LLC*, 89 F. Supp. 3d 573, 590 (S.D.N.Y. 2015) (footnote omitted) (quoting *Goldberger v.*

*Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)).  "After the computation is done, 'the

district court may, in its discretion, increase the lodestar by applying a multiplier based on "other

less objective factors," such as the risk of the litigation and the performance of the attorneys.'"

*Id.* at 590–91 (quoting *Goldberger*, 209 F.3d at 47).  "Although [the Second Circuit] ha[s]

acknowledged that the trend in this Circuit is toward the percentage method, it remains the law in

this Circuit that courts may award attorneys' fees in common fund cases under either the

'lodestar' method or the 'percentage of the fund' method."  *McDaniel*, 595 F.3d at 417 (some

quotation marks omitted).  Under either approach, courts draw on the following considerations—

commonly known as the "Goldberger factors"—when assessing the reasonableness of attorneys'

fees: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the

litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in

relation to the settlement; and (6) public policy considerations."  *Goldberger*, 209 F.3d at 50

(alteration and quotation marks omitted).

When requesting attorneys' fees in an FLSA case, "counsel must submit evidence providing a factual basis for the award." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012). Although courts may elect to award fees by either considering the lodestar method—the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended—or the percentage method—a percentage of the total amount recovered by the plaintiffs—"[t]he trend in [the Second] Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A.*, Inc., 396 F.3d 96, 121 (2d Cir. 2005). Even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Nights of Cabiria*, 96 F. Supp. 3d at 181. The Court must also determine the reasonable hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).

Under the proposed Class Settlement, Plaintiffs' Counsel would likely receive (after final approval) $64,333,33 a sum which reflects precisely one-third of the gross settlement sum of $193,000. Such a percentage is appropriate as courts in the Second Circuit routinely award attorney's fees in FLSA settlements of one-third of the total recovery. *See Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases."); *see also Ocasio v. Big Apple Sanitation, Inc.*, No. 13-CV-4758, 2016 WL 5376241, at *2 (E.D.N.Y. Mar.

16, 2016) (noting that the fee sought was "less than the typical contingency fee percentage of 33 1/3%"), adopted by 2016 WL 5390123 (E.D.N.Y. Sept. 26, 2016). Plaintiffs' Counsel also notes that his typical billing rate is $350 per hour, and that he has already expended at least 152.78 hours on the case, amounting to a lodestar figure of approximately $50,702.50. (Approval Request 4.) Plaintiff has provided documentation of these hours in a prior submission in this case. (*See* Dkt. No. 130-3.) Additionally, the Court has already approved a fee of $9,000 to Counsel in this case based on the Mazzei Settlement. (*See* Dkt. No. 131.) Accordingly, Counsel's likely total fee of $73,333.33 from this case exceeds the current "lodestar" calculation by nearly 50%. Nonetheless, the Court considers the fee reasonable for three reasons. First, as final approval of the settlement still requires a fairness hearing and related motion, Plaintiffs' Counsel will likely expend additional hours on this case. *See Sewell v. Bovis Lend Lease, Inc.*, No. 09-CV- 6548, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) (permitting attorney's fees several times the lodestar because "counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement"); *Bellifemine v. Sanofi*, 2010 WL 3119374, at *6 (S.D.N.Y. Aug.6, 2010) (same). Second, in its discretion, a court may "increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." *Ortiz*, 89 F. Supp. 3d at at 590–91 (quoting *Goldberger*, 209 F.3d at 47). Here, the risk and costs of litigation would be significant; indeed, the Court has already denied class certification once. (Dkt. No. 116.) Moreover, courts in the Second Circuit have often "award[ed] lodestar multipliers between two and six." *Sewell*, 2012 WL 1320124, at *13. A multiplier of 1.5 is considerably less than that range. Third, "the trend in th[e Second] Circuit is toward the percentage method," rather than the lodestar method, for the calculation of attorney's fees.

*McDaniel*, 595 F.3d at 417.  Thus, because Counsel's fees are squarely within the accepted range with respect to the percentage method, an additional 50% of the lodestar does not appear to be excessive.  *See Pucciarelli*, 2017 WL 2778029, at *2 (noting that the "lodestar method confirms [the] conclusion" that a fee constituting 33.3% of FLSA settlement was reasonable); *Sewell*, 2012 WL 1320124, at *13 (permitting a large multiplier of the lodestar in part because the resulting fee "equals the one-third percentage being sought").  Based on these factors, the Court finds that $63,333 is a reasonable fee.

### III. Conclusion

For the reasons stated in this Order, the Court concludes that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."  *Escort*, 2017 WL 1194684, at *2.  Accordingly, the Court finds "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Exec. Ass'n-E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980) (quotation marks omitted).  The Parties' application for preliminary approval of the proposed FLSA Class Settlement is therefore granted.

Accordingly, contemporaneous with the issuance of this Order, the Court has issued an additional Order approving Plaintiffs' proposed Class Notice, setting a deadline for Plaintiff's Motion for Final Approval, and scheduling a date for the related Fairness Hearing.

SO ORDERED.

Dated:   White Plains, New York
         May 13, 2020

                                        _____
                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

16